Filed 4/26/16  Kerkorian v. Mandekic CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LISA BONDER KERKORIAN et al., | B252861 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BP141317) |
| ANTHONY MANDEKIC, as Personal Representative, etc., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael Levanas, Judge.  Affirmed.

Trope & DeCarolis, Michael L. Trope and Andrew Stein for Plaintiffs and Appellants.

Sacks, Glazier, Franklin & Lodise, Margaret Lodise and Katherine G. McKeon for Defendant and Respondent.

_____

Lisa Bonder Kerkorian (Lisa) and Taylor Kreiss (Taylor, collectively petitioners) appeal from an order granting the motion for sanctions (Code Civ. Proc., § 128.7)[1] by Kirk Kerkorian (Kirk)[2] for filing a frivolous probate petition and awarding Kirk the amount of $76,598.32 as attorney fees and costs. "Under . . . section 128.7, a court may impose sanctions for filing a pleading if the court concludes the pleading was filed for an improper purpose or was indisputably without merit, either legally or factually." (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 440 (*Peake*).) "[S]ection 128.7 provides for a 21-day period during which the opposing party may avoid sanctions by withdrawing the offending pleading or other document. [Citations.] By providing this safe harbor period, the Legislature designed the statute to be 'remedial, not punitive.' [Citation.] When a party does not take advantage of the safe harbor period, the 'statute enables courts to deter or punish frivolous filings which disrupt matters, waste time, and burden courts' and parties' resources.' [Citation.]" (*Id.* at p. 441.)

Petitioners contend the probate court erred in granting the motion because the motion, as originally served, was defective in that the notice of motion failed to identify both the proper hearing date and the requests for judicial notice in support of the motion and these requests for judicial notice were not served with the motion. They contend the court abused its discretion by refusing to read beyond page 15 of their opposition, failing to consider their counterevidence, and denying their request for an evidentiary hearing on the sanctions motion. They also contend the court abused its discretion in finding the petition lacked evidentiary support. In challenging the award, petitioners contend the court improperly awarded Kirk more than twice the amount he originally requested and

---

[1] Undesignated section references are to the Code of Civil Procedure.

[2] On June 15, 2015, during the pendency of this appeal, Kirk died. On July 14, 2015, this court ordered, "All further proceedings in this appeal stayed pending order of this court." On March 16, 2016, this court ordered Anthony Mandekic, the duly appointed personal representative for the Estate of Kirk Kerkorian, substituted in place of Kirk Kerkorian, deceased, as respondent in this appeal; the stay lifted; and the appeal to proceed forthwith. For clarity and continuity, we refer to respondent as "Kirk."

failed to consider whether the fees and costs sought were reasonably related to petitioners' purported violation of section 128.7.

We affirm the order. That the actual hearing took place on a date later than the date reflected on the originally served notice of motion did not violate section 128.7, and thereby, bar the 21-day safe harbor period from running from the date of service. The notice of motion did not have to identify the requests for judicial notice in support of the motion, nor did these requests for judicial notice have to be served along with the motion itself. Pursuant to rule 3.1113(d) of the California Rules of Court,[3] petitioners were not authorized to file an opposing memorandum exceeding 15 pages. The court therefore did not abuse its discretion in not considering their opposition beyond page 15. The court's refusal to hold an evidentiary hearing on the motion was neither error nor an abuse of discretion. The record refutes petitioners' claim the court failed to consider the evidence relied upon in opposition to the motion. Substantial evidence supports the court's finding that the petition was frivolous. The court did not abuse its broad discretion in awarding Kirk $76,598.32 in attorney fees and costs as sanctions against petitioners.

**BACKGROUND**

Kirk and Lisa previously were married. Lisa is the mother of Kira Kerkorian (Kira), who was born in 1998. It is undisputed that Kirk is not Kira's biological father. Kirk and Lisa later divorced.

Kirk had been paying child support for Kira pursuant to orders of the family law court in *In re Marriage of Kerkorian*, Los Angeles Superior Court case No. BD308513. As of October 5, 2012, Kirk was obligated to pay $100,000 a month as child support for Kira. On that date, Lisa filed a petition in the family law court to modify that amount to $525,996 a month to enable Kira to pursue her Olympic equestrian goal.[4] "Kirk is a multi-billionaire," according to Lisa.

---

[3] All further references to rules are to the California Rules of Court unless otherwise indicated.

[4] Lisa asserted: "At age 15, [Kira] attends school and spends the rest of her time with her horses. She is consumed with becoming a member of the U.S. Olympic

3

In the underlying action here, Lisa filed a petition for conservatorship over Kirk and his estate in the probate court. Kirk filed a demurrer to the petition.

On June 4, 2013, Lisa, joined by Taylor, her son from a previous marriage, filed a first amended petition (FAP). The FAP was signed by Lisa, Taylor, and Marshal A. Oldman, petitioners' attorney.

The FAP for appointment of a conservator over Kirk and his estate is based on claims that Kirk was in frail physical health, others isolated him from contact with Kira and Taylor, and he is unable to manage his business affairs, and is supported by the following material factual allegations: Specifically, the FAP alleged, "As Kira's mother, Lisa believes that Kirk's court ordered child support payments for the benefit of Kira could be endangered by further inaction by [the probate] court to appoint a conservator."

Kirk was almost 96 years old. "Kira has had no contact with [Kirk] since around 2008"; "Kira has been unable to communicate with him, and has no means of contacting him other than attempts made by [Lisa's] attorneys through [Kirk's] handlers"; "all visitation between Kirk and Kira has ceased and all of Kira's attempts to visit [him] have also been barred." "In 2013, Kira sent a card to [Kirk] asking to see him. That card was forwarded to Kirk's family law attorneys by Lisa'a family law attorneys, requesting a response. No response was ever provided."

While Lisa was living with Kirk, Taylor resided in the same household. "He has many fond memories of Kirk," "for example, when they would open presents together on Christmas mornings." Also, the three had "traveled all over the world together—often," and "Kirk even paid for Taylor's private schooling when they resided together in Las Vegas." "Kirk often told Taylor that he wanted to see him." "Taylor last saw Kirk in roughly 2011." On that occasion, Kirk was having lunch at the Beverly Hills Tennis Club and beckoned Taylor to his table. "Kirk was warm, welcoming, and pleasant."

equestrian team in 2016 as a jumper competitor. It is the opinion of her coach and other equestrian experts . . . that she will be accomplished enough to seriously compete in the 2016 Olympic trials. A Request for Order for additional support is pending in [the family law] court for the purpose of increasing child support to finance Kira's Olympic goals."

4

"Taylor had spent most of his childhood around Kirk. They . . . reminisced over old times" and "talked about getting together again at some point. Kirk said something that struck Taylor: 'You grow up watching over someone, and they end up watching over you.'" "Based on things he has heard and read, Taylor genuinely worries about Kirk's well-being and how people are treating him in his winter years. With sobriety and love, Taylor joins the petition to appoint a conservator for this gentle titan."

On January 25, 2012, Tracinda Corporation (Tracinda), a Nevada corporation which was wholly owned by Kirk, filed a first amended complaint in Las Vegas, Nevada, against Edward Mile David for fraud, among other claims, concerning Tracinda's purchase of Delta Petroleum in which more than $684 million was sought. On April 27, 2012, "Tracinda Corporation summarily dismissed the action without the payment of any damages." On this same date, the court had granted a motion shortening time to hear a motion for a protective order that Kirk's deposition in that matter be taken "in Los Angeles for one day only."

The FAP further alleges petitioners "are concerned that the motive for the dismissal . . . was based on the fear of Kirk's handlers that he was not physically or mentally fit to have his deposition taken as a result of his physical and mental deterioration." That a need existed to conceal such deficiencies from the public is evidenced by the fact that in 1998 Kirk executed a power of attorney which authorized a third party to sign Kirk's name to the application before the Securities Exchange Commission "to purchase 8% of $7.2 billion shares of MGM stock (approximately $576,000,000.00)." Also alleged in the FAP is "persons purporting to act on Kirk's behalf may in fact have no authority to do so" because this particular power of attorney would not survive Kirk's incapacity and petitioners "are further informed and believe that no one possesses a durable power of attorney to act on Kirk's behalf."

On June 19, 2013, Kirk served a sanctions motion under section 128.7 personally on petitioners' counsel, Mr. Oldman.

On July 10, 2013, Kirk filed the originally served sanctions motion.

5

On July 18, 2013, Kirk filed and served a second sanctions motion along with a separate request for judicial notice and a further request for judicial notice. Petitioners filed opposition, and Kirk filed a reply.

On July 22, 2013, petitioners dismissed the FAP.

On September 12, 2013, during the hearing on the motion, petitioners objected to the court not reading their entire 61-page opposition, arguing the 15-page limit of rule 3.1113, which applied to law and motion matters, was inapplicable to a proceeding before the probate court. The court invited the parties to brief the issue and took the matter under submission. Petitioners and Kirk filed opposing memoranda addressing this issue.

On October 1, 2013, the court granted the sanctions motion and awarded Kirk $76,598.32 as attorney fees and costs.[5] The court found the motion was timely under section 128.7 because the motion was personally served on Mr. Oldman on June 19, 2013, and the motion was filed on July 10, 2013, the expiration of the safe harbor period, and the FAP was not withdrawn during that period. The court further found the FAP had been brought without evidentiary support; it was brought for improper purposes; and it was frivolous.

Based on its findings the FAP lacked "a sufficient evidentiary basis, was brought for an improper purpose and thus frivolous," the court awarded sanctions in favor of Kirk and against petitioners in "the full amount requested," i.e., $76,598.32. In so doing, the court set forth in detail the statements of Margaret Lodise, Kirk's counsel, concerning the hours expended in connection with the conservatorship proceedings and regarding the section 128.7 motion by herself and her associate, Katherine McKeon, and the billing rate of each attorney and statements itemizing the attendant costs.

---

[5] The court granted the applications for an order authorizing filing under seal the declaration of Eric Esrailian, M.D., MPH, dated November 20, 2012; the declaration of Dr. Esrailian dated March 28, 2013; the declaration of Gary Leach, M.D., dated April 5, 2013; the declaration of Karl Steinberg, M.D., dated April 2, 2013; and the points and authorities accompanying petitioners' opposition to the sanctions motion.

## DISCUSSION

**1.** *21-Day Safe Harbor Period Not Violated As Motion Served Not Defective*

Petitioners contend the probate court erred in granting the motion because the motion, as originally served, was defective in that the notice of motion failed to identify the proper hearing date[6] and the requests for judicial notice were not served with the motion. They assert these defects meant the 21-day safe harbor period did not commence to run on June 19, 2013, and the filing of that motion was untimely because petitioners already had dismissed the FAP before that motion was filed. The originally served motion was timely because service of that motion was not defective.[7]

The first page of the "Notice of Motion and Motion for Sanctions Pursuant to CCP § 128.7" personally served on petitioners' counsel on June 19, 2013, identified the date, time, and department for hearing of the motion, respectively, as August 1, 2013, 8:30 a.m., and "Dept.: 11." The first page of that document, as filed on July 10, 2013, however, reflects a filing stamp which indicates the hearing was scheduled for August 13, 2013, at 10:00 a.m.[8]

---

[6] Petitioners forfeit their claim made for the first time on appeal that the motion originally served was defective because the request for judicial notice was not identified properly in the motion.

[7] In his opposing declaration, Mr. Oldman stated he received in the mail "a second sanctions motion, which appeared to be essentially the same as the first, only it sought sanctions of $60,712, compared with the first sanctions motion, which requested $32,265." In its sanctions order, the court noted the 21-day safe harbor period runs from the filing date of the motion, not the service date, when the motion filed is not the same as the motion served. (*Hart v. Avetoom* (2002) 95 Cal.App.4th 410, 413.) The court stated it was "uncertain whether the motion filed was the same as the motion served," but "[i]t appears likely, . . . considering [petitioners] did not address this as an issue in their opposition papers." Petitioners therefore have forfeited any claim of error arising from the variation in the motion served and the second motion filed. We note, however, this variation is immaterial because in the motion served petitioners were put on notice that the amount of sanctions would be changed based on subsequent events.

[8] The probate court continued the matter to September 12, 2013.

7

On July 16, 2013, petitioners' counsel requested Kirk's counsel withdraw the original sanctions motion because it had not been served with the request for judicial notice referenced in the motion nor had the request been properly identified by name and date.

On July 17, 2013, Kirk's counsel responded she did not have to serve the request for judicial notice with the originally served motion because she already had served all except one of the exhibits; however, "[i]n an abundance of caution," she was "concurrently re-serving" the motion "along with the Request for Judicial Notice."

On July 18, 2013, petitioners' counsel was served by mail with a second "Notice of Motion and Motion for Sanctions Pursuant to CCP § 128.7," which indicated on its first page that the hearing was scheduled for September 6, 2013, at 10:00 a.m. The hearing in fact took place on September 12, 2013.

In the motion served on June 19, 2013, Kirk stated "filed concurrently" with the motion was his request for judicial notice of "Ex. A (Transcript), at 21:13-27)"; "Ex. B (March 28, 2013 Declaration of Dr. Eric Esrailian"; "Ex. C (Bonder Declaration)"; "Ex. D (Judge Lee Smalley Edmon's March 12, 2003 Amended Statement of Findings)"; and "Ex. E (Judge Marjorie S. Steinberg's December 1, 2006 Statement of Findings and Statement of Decision)."

Kirk's request for judicial notice, however, was not served until July 18, 2013, the same date as his second motion was served and filed.[9] Exhibits A and C through E pertained to matters in the related family law action (L.A. Super. Ct. No. BD308513).[10]

---

[9] In reply to the opposition to the sanctions motion, Kirk's attorney attached her declaration in which she stated, "On July 15, 2013, 16 court days plus five additional days for mailing prior to the hearing, which had been scheduled for August 13, 2013, [she] arranged for [her] office to serve a conformed copy of [the request for judicial notice and further request for judicial notice] on the parties to this action" and that "[t]rue and correct copies of the Proofs of Service are attached hereto as Exhibit A."

[10] Exhibit A was the "Reporter's Transcript of Proceedings June 11, 2013," before "Hon. Scott M Gordon"; exhibit C was the declaration of Lisa, executed on January 22, 2013; exhibit D was the "Amended Statement of Findings . . . [dated] March 12, 2003"; and exhibit E was the "Statement of Findings . . . [dated] December 1, 2006."

The request indicated "B" was "intentionally skipped" and directed the reader to the "accompanying Further Request for Judicial Notice." The separate, further request for judicial notice also was served on July 18, 2013. In that request, Kirk sought judicial notice of exhibit B, the "Confidential Declaration of Eric Esrailian, M.D., MPH, dated March 28, 2013, and filed conditionally under seal in Case No. BD308513 on April 3, 2013." The declaration attached as exhibit B was totally redacted.[11] Neither the request nor the further request for judicial notice identified the hearing date.

Contrary to petitioners' claim, the fact the motion originally served did not identify the hearing date and time at which the actual hearing was conducted is inconsequential. Section 1010 provides a notice of motion for sanctions under section 128.7 "must state when" the motion "will be made." (§§ 1010, 128.7, subd. (c)(1).) The first page of the notice of motion "must specify" "[t]he date, time, and location, *if ascertainable*, of any scheduled hearing." (Rule 3.1110(b)(1), italics added.) The significance of the phrase "if ascertainable" is that no date, time, or location of the scheduled hearing is required on the notice of motion if such information is not ascertainable by the moving party.

When the original motion was filed on July 10, 2013, the court rescheduled the hearing from August 1, 2013, to August 13, 2013. When the second motion was filed, the hearing was rescheduled to September 6, 2013, which hearing the court then continued to September 12, 2013. That the served original notice of motion identified the hearing date as August 1, 2013, at 8:30 a.m., when the actual hearing took place on September 12, 2013, does not render the originally served motion fatally defective.

Petitioners' reliance is misplaced on *Galleria Plus, Inc. v. Hanmi Bank* (2009) 179 Cal.App.4th 535 (*Galleria*), which is factually inapplicable, for a contrary

---

[11] The probate court ruled on the requests for judicial notice as follows: "Kirk requests that the Court take judicial notice of six exhibits. The Court declines to take judicial notice of the letter [*sic*] in Exhibit B, the Declaration of Lisa . . . in Exhibit C and the Declaration of Eric Esrailian. The Court, however, takes judicial notice of the existence of the remaining documents, but refrains from taking judicial notice of the hearsay statements asserted within."

conclusion. The court found noncompliance with section 1010 because the "purported notice, served April 25, 2008, indicated the motion would be heard 'on AAA at BBB.'" (*Id.* at p. 538.) "'AAA at BBB'" clearly does not identify any date or time certain for the hearing.[12]

Strict compliance with section 128.7's dictates indeed is mandatory. (*Galleria*, *supra*, 179 Cal.App.4th at p. 538; see also *Li v. Majestic Industry Hills LLC* (2009) 177 Cal.App.4th 585, 593.) A request for judicial notice, however, is a different creature than a motion. No hearing need be held before the court may rule on such request, which therefore is not subject to the date and time of hearing requirements of section 1010 and rule 3.1110(b)(1) applicable to notices of motion. The absence of a date and time for a hearing on Kirk's requests for judicial notice therefore is of no import.

Petitioners misunderstand the penalty for noncompliance with section 1010 regarding the omission to serve a document relied on in a motion for sanctions under section 128.7 at the same time as the motion is served. Such noncompliance does not have the effect of rendering the sanction motion defective and thereby deprive the court of jurisdiction to entertain and rule on that motion.

"Section 1010 . . . provides that the notice must state 'the papers, if any, upon which it is to be based. If any such paper has not previously been served upon the party to be notified and was not filed by him, a copy of such paper must accompany the notice.' It may be true that a paper referred to in the notice and not served therewith cannot be admitted in evidence at the hearing, but failure to serve such paper is not made a ground for refusing to hear the motion or to admit in evidence other papers properly served." (*Jones v. Southern Pac. Co.* (1925) 71 Cal.App. 773, 776.)

Additionally, a request for judicial notice, unlike a declaration in support of the motion, is not a "'paper[] . . . upon which [the motion] is to be based'" within the meaning of section 1010. A memorandum in support of a motion "must contain[, among

---

[12] Petitioners also cite *Musaelian v. Adams* (2011) 197 Cal.App.4th 1251, at pages 1256–1257, to support their position that "a notice failing to specify the correct hearing date is 'fatally defective.'" This issue, however, was not before that court.

other things,] a statement of facts" and "a concise statement of the . . . evidence . . . relied on . . . in support of the position advanced." (Rule 3.1113(b).) In contrast, "[a]ny request for judicial notice must be made in a separate document listing the specific items for which notice is requested and must comply with rule 3.1306(c)" (rule 3.1113(*l*)), which, in pertinent part, requires "[a] party requesting judicial notice of material under Evidence Code sections 452 or 453 [to] provide the court and each party with a copy of the material" (rule 3.1306(c)). "The trial court shall take judicial notice of any matter specified in [Evidence Code] Section 452 if a party requests it and [in addition to another requirement] [¶] . . . [g]ives each adverse party sufficient notice of the request, *thorough the pleadings or otherwise*, to enable such adverse party to prepare to meet the request." (Evid. Code, § 453, subd. (a), italics added.) Accordingly, a request for judicial notice, which is not itself evidence upon which a motion is based, need not be served at the same time a motion for sanctions under Code of Civil Procedure section 128.7 is served.

**2. *Refusal to Read Beyond Page 15 of Opposition Memorandum Not Abuse***

Petitioners contend the court abused its discretion by refusing to read beyond page 15 of their opposition, because rule 3.1113(d) is inapplicable to probate proceedings. Their contention is contrary to the law.

Rule 3.1113(d), which is located in division 11, entitled, "Law and Motion," of the California Rules of Court, provides in pertinent part: "Except in a summary judgment or summary adjudication motion, no opening or responding memorandum may exceed 15 pages. . . . The page limit does not include exhibits, declarations, attachments, the table of contents, the table of authorities, or the proof of service."[13]

Petitioners do not dispute that a sanctions motion under section 128.7 is subject to rule 3.1113(d). Their position is that rule 3.1113(d) does not apply to such a motion

---

[13] To the extent they believed the 15-page limit was inadequate to express the totality of their contentions, they could have, but did not, seek leave to exceed that page limit. A party may to apply to the court for permission to file a longer memorandum, "at least 24 hours before the memorandum is due," but "must state reasons why the argument cannot be made within the stated limit." (Rule 3.1113(e).)

made before the probate court. They assert the definition of "law and motion" expressly excludes "causes arising under . . . the Probate Code" (rule 3.1103(a))[14] and "[t]he rules of this division apply to proceedings in civil law and motion, as defined in Rule 3.1103, and to discovery proceedings in family law and probate" (rule 3.1100).

The law is otherwise. Division 11 (Law and Motion) is one of 21 divisions of title 3, entitled, "Civil Rules." "The Civil Rules apply to all civil cases in the superior courts, including general civil, family, juvenile, and *probate cases*, unless otherwise provided by a statute or a rule in the California Rules of Court." (Rule 3.10, italics added.)

The initial fallacy of their position lies in their faulty premise that a sanctions motion constitutes a "cause[] arising under . . . the Probate Code." As a matter of law, this sanctions motion arises under the Code of Civil Procedure, not the Probate Code. (Cf. Prob. Code, § 850 [application for order to determine title to property].) Additionally, petitioners misconstrue the reference in rule 3.1100 to "discovery proceedings in . . . probate." The purpose of allowing the rules of division 11 (Law and Motion) to apply to "discovery proceedings in . . . probate" is to clarify that such rules apply in "causes arising under . . . the Probate Code" as to discovery matters, an express exception to the definition of "law and motion" as excluding "causes arising under . . . the Probate Code" (rule 3.1103(a)). Further, as the Probate Code itself instructs, "[e]xcept to the extent that this code provides applicable rules, the rules of practice applicable to civil actions, including discovery proceedings . . . , apply to, and constitute the rules of practice in, proceedings under this code." (Prob. Code, § 1000.)

### 3. *Court's Consideration of Petitioners' Evidence Reflected in Record*

Petitioners contend the probate court abused its discretion by failing to consider their counterevidence. A review of the record refutes this contention.

---

[14] In pertinent part, rule 3.1103(a)(1) reads: "'Law and motion' includes any proceedings: [¶] . . . [o]n application before trial for an order, except for causes arising under the . . . Probate Code."

12

At the hearing on the motion, the probate court indicated the opposition was "61 pages long" and announced the court would "only consider the first 15 pages of the Memorandum of Points and Authorities in . . . the Opposition." The court, however, did not state it would not consider petitioners' "exhibits, declarations, attachments, the table of contents, the table of authorities, or the proof of service," which are matters excluded from that 15-page limit (rule 3.1113(d)), which is located in division 11, entitled, "Law and Motion," of the California Rules of Court and provides in pertinent part: "Except in a summary judgment or summary adjudication motion, no opening or responding memorandum may exceed 15 pages. . . . The page limit does not include exhibits, declarations, attachments, the table of contents, the table of authorities, or the proof of service." The record reflects the court in fact examined the tables of contents and authorities. That the court also took into account petitioners' counterevidence is reflected in the court's findings that "[n]one of the 'evidentiary support' cited by Petitioners demonstrates that Kirk lacked capacity and was in need of a conservator," and such "'evidence' is based more so on assumption and forgetfulness that comes with old age (Kirk is 96 years old), not necessarily [from a] mental disease, like Alzheimer's or Dementia."

**4. *Denial of Opportunity to Present Oral Evidence at Hearing Not Error or Abuse***

Petitioners contend the trial court abused its discretion in denying their request for an evidentiary hearing on the sanctions motion. The probate court did not err or abuse its discretion in refusing to allow petitioners to present oral evidence at that hearing.

Petitioners had requested a "live evidentiary hearing" "so that [the probate c]ourt may hear directly from Kirk to permit [the court] to decide whether the petition's allegations are frivolous and lack evidentiary support and whether Kirk wishes to seek sanctions against [petitioners]." On September 12, 2013, the probate court conducted a hearing at which counsel were allowed to argue orally their respective positions regarding the sanctions motion. No evidence was taken.

Section 128.7 specifically requires "notice and a reasonable *opportunity to respond*" as a prerequisite to an award of sanctions in a motion by a party. (§ 128.7,

13

subd. (c), italics added.) In contrast, a prerequisite to a sanctions award under section 128.5 is "notice and *opportunity to be heard*." (§ 128.5, subd. (c), italics added.) It is unclear whether "opportunity to respond" equates with "opportunity to be heard."

Whether a right to oral argument on a statutory motion exists *initially* depends on the Legislature's intent (*Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1244), and the mere inclusion of the word "'hearing'" or "'heard'" in the statute "does not require an opportunity for an oral presentation, unless the context or other language indicates a contrary intent" (*id.* at p. 1247).[15] We conclude that when viewed in context, the phrase "opportunity to respond" in section 128.7, subdivision (c) includes an opportunity for oral argument at a hearing. The "[n]otice of motion shall be served as provided in Section 1010." (§ 128.7, subd. (c)(1).) Section 1010 provides the notice "must state when" the motion will be made. The first page of each notice must specify "[t]he date, time, and location, if ascertainable, of any scheduled hearing." (Rule 3.1110(b)(1).) Also, a hearing is required where the court, on its own motion, "enter[s] an order describing the specific conduct that appears to violate [section 128.7]," because the court must then "direct[] an attorney, law firm, or party to *show cause* why it has not violated [that section], unless, within 21 days of service of the order to show cause, the challenged paper, claim, defense, contention, allegation, or denial is withdrawn or appropriately corrected." (§ 128.7, subd. (c)(2), italics added.) Section 128.7 therefore contemplates a hearing with oral argument.

---

**15** In *Lewis v. Superior Court*, our Supreme Court acknowledged there was a split at the appellate level regarding the requirement of oral argument prior to disposition of a summary judgment motion but specifically declined to "consider the validity" of these opposing decisions. (19 Cal.4th at p. 1248, fn. 10; see *Sweat v. Hollister* (1995) 37 Cal.App.4th 603, 613–614 [no oral argument required], disapproved on other grounds in *Santisas v. Goodin* (1998) 17 Cal.4th 599, 609, fn. 5; cf. *Mediterranean Construction Co. v. State Farm Fire & Casualty Co.* (1998) 66 Cal.App.4th 257, 262–265.) In *Brannon v. Superior Court* (2004) 114 Cal.App.4th 1203, however, the court that decided *Sweat* held a party has the right to present oral argument on a summary judgment motion, disapproving as dicta language to the contrary in *Sweat*. (*Brannon*, at p. 1205.)

In reviewing the provisions of section 128.7, which is modeled on rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.), California courts may consider federal decisions as persuasive in interpreting that rule. (*Peake*, *supra*, 227 Cal.App.4th at p. 440.) In *Childs v. State Farm Mut. Auto. Ins. Co.* (5th Cir. 1994) 29 F.3d 1018 the court concluded: "It is true that Rule 11 sanction decisions must comport with due process. [Citations.] This requires notice and an opportunity to be heard before the imposition of Rule 11 sanctions. [Citations.] The requirement of an opportunity to be heard, though, does not require an elaborate or formal hearing. [Citation.] Simply giving the individual accused of a Rule 11 violation a chance to respond through the submission of a brief is usually all that due process requires. [Citations.]" (*Id.* at p. 1027.)

We are not persuaded that disposition of a motion for sanctions under section 128.7 on the parties' briefs does not comport with due process. In the context of frivolous appeal sanctions, our Supreme Court concluded: "Due process is a flexible concept, and must be tailored to the requirements of each particular situation. '"The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation."' [Citations.] However, the *rudiments of fair play include notice, an opportunity to respond, and a hearing*. [Citation.] The appellate courts should exercise their statutory power to impose sanctions only after scrupulously observing the due process mandates set forth herein. Penalties for prosecuting frivolous appeals should not be imposed without giving fair warning, affording the attorney *an opportunity to respond* to the charge, *and holding a hearing*." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 654, italics added.) We conclude due process mandates that parties be afforded an opportunity to present oral argument at a hearing.

We find contrary to law petitioners' contention the probate court was required to hold an evidentiary hearing on the sanctions motion rather than proceed on declarations alone. This was a "law and motion hearing," which "must be by declaration or request for judicial notice without testimony or cross-examination, unless the court orders otherwise for good cause shown." (Rule 3.1306(a).) Also, the request to present oral evidence must be in "a written statement" filed "no later than three court days before the

15

hearing" and "stating the nature and extent of the evidence proposed to be introduced and a reasonable time estimate for the hearing." (Rule 3.1306(b).)

In addition to the absence of the requisite written statement, petitioners failed to carry their burden to show good cause for such oral evidence. They sought to compel the testimony of Kirk "so that the court could hear directly from Kirk [in order] to decide whether the FAP's allegations were frivolous and lacked evidentiary support." This was not a trial at which it was incumbent on the court to find Kirk was or was not incompetent or incapacitated. Rather, it fell to petitioners to present evidence which supported the FAP's allegations of Kirk's incompetency and incapacity to demonstrate these allegations were not frivolous when made.

## 5. *Evidence Substantial Petition Frivolous*

Petitioners contend the court abused its discretion in finding the petition lacked evidentiary support.[16] They assert service of the motion was premature because they had no reasonable opportunity to conduct discovery and an investigation in that the motion was served just over a month after the conservatorship action was filed and two weeks after the filing of the FAP. Kirk failed to present any admissible substantive evidence that the FAP lacked evidentiary support. Also, the court failed to consider petitioners' evidence in support of the petition and, instead, credited Kirk's hearsay evidence.

Initially, we point out whether Taylor did not know of Dr. Esrailian's assessment of Kirk's competency is immaterial. The issue is whether Taylor was in possession of facts, not merely suspicion or speculation, that indicated Kirk lacked such competency.

Moreover, section 128.7 imposes on a party's attorney or the party, if unrepresented, the affirmative duty to conduct an initial "inquiry reasonable under the circumstances" and certify "to the best of that person's knowledge, information, and belief, formed after [such] inquiry" that "[t]he allegations and other factual contentions

---

[16] Having failed to raise their claim of error before the probate court, petitioners forfeit their claim no evidence was presented that Taylor, not a party to the child support action, knew what Dr. Esrailian stated in his sealed March 2013 declaration about Kirk's ability to make his own decisions and his testamentary capacity.

16

have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for *further* investigation or discovery."[17] (§ 128.7, subd. (b)(3), italics added.) "Further" is the key. Accordingly, it is not enough that the petition sets forth allegations of facts, e.g., Kirk's incapacity or incompetence, in support of the prayer for relief. Petitioners must offer evidence in support of such allegations or demonstrate that "a reasonable opportunity for further investigation or discovery" will produce such evidence. Petitioners have failed to show they have met this threshold. Mere suspicion or sheer speculation is insufficient to trigger an opportunity for "further investigation or discovery," the purpose of which is to flesh out the alleged facts as reflected in an initial investigation. The mere proximity in time between the filing of the FAP and service of the sanctions motion is immaterial.

Substantial evidence supports the probate court's finding the FAP is frivolous. "A claim is factually frivolous if it is 'not well grounded in fact' and it is legally frivolous if it is 'not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.' [Citation.] In either case, to obtain sanctions, the moving party must show the party's conduct in asserting the claim was objectively unreasonable. [Citation.] A claim is objectively unreasonable if 'any reasonable attorney would agree that [it] is totally and completely without merit.' [Citations.]" (*Peake*, *supra*, 227 Cal.App.4th at p. 440.) In this instance, no reasonable attorney would disagree that the FAP is patently frivolous. On its face, the FAP fails to allege any colorable material facts which would support a finding that a conservator for Kirk and his estate was necessary because Kirk was incompetent and incapacitated to handle his personal and business affairs.

---

[17] The Supreme Court has held rule 11 of the Federal Rules of Civil Procedure "imposes on any party who signs a pleading, motion, or other paper—whether the party's signature is required by the Rule or is provided voluntarily—an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and that the applicable standard is one of reasonableness under the circumstances." (*Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.* (1991) 498 U.S. 533, 551.)

## 6. *Amount of Sanctions Award Not Abuse*

Petitioners contend the court improperly awarded Kirk more than twice the amount he originally requested.[18]  The probate court did not abuse its discretion in awarding $76,598.32 as sanctions against petitioners.

"A sanction imposed [under section 128.7] shall be limited to what is sufficient to deter repetition of this conduct or comparable conduct by others similarly situated" and "the sanction may consist of, or include, . . . an order directing payment to the movant of *some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation*."  (§128.7, subd. (d), italics added.)  Further, "[i]f warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion."  (§ 128.7, subd. (c)(1).)

"A court has broad discretion to impose sanctions if the moving party satisfies the elements of the sanctions statute.  [Citation.]" (*Peake*, *supra*, 227 Cal.App.4th at p. 441.) "We review a . . . section 128.7 sanctions award under the abuse of discretion standard.  [Citation.]  We presume the trial court's order is correct and do not substitute our judgment for that of the trial court.  [Citation.]  To be entitled to relief on appeal, the court's action must be sufficiently grave to amount to a manifest miscarriage of justice.  [Citation.]" (*Ibid*.)

In her initial declaration, Ms. Lodise, Kirk's attorney, stated:  "My billing rate is $625.00 per hour.  I have spent 30.6 hours working in connection with the Conservatorship proceedings, resulting in $19,125.00 in legal fees"; "My associate, Katherine McKeon, has assisted me with this matter. . . . Her billing rate is $360.00 per hour.  She has spent 36.5 hours working in connection with the Conservatorship proceedings, resulting in $13,150.00 in legal fees; and Kirk "has thereby incurred $32,265.00 in legal fees."  In the notice of motion and in the supporting memorandum,

---

[18] Petitioners forfeited their claim, which was not raised before the probate court, that "[t]he court failed to consider the reasonableness of Kirk's fees and costs and their nexus to the purported violation of section 128.7."

Ms. Lodise advised petitioners Kirk "will provide an updated attorneys' fee amount in its reply and at the time of the hearing."

In her declaration attached to Kirk's reply, Ms. Lodise stated "the total fees and expenses incurred by [Kirk] is $76,598.32. Had Petitioners not filed the Petition, [Kirk] would not have had reason to retain my firm, and none of these expenses would have been incurred by him." She explained: "My billing rate is $625.00 per hour. I have spent 74.6 hours working in connection with the Conservatorship proceedings. This includes 12.6 hours spent on issues relating to the 128.7 Motion, and 62.0 hours spent on other issues related to the conservatorship proceeding. This work has resulted in $46,625 in legal fees." Further, "My associate Katherine McKeon, has assisted me with this matter. Her billing rate is $360.00 per hour. She has spent 78.8 hours working in connection with the Conservatorship proceedings. This includes 24.2 hours spent on issues relating to the 128.7 Motion, and 54.6 hours spent on other issues relating to the conservatorship proceedings. This work has resulted in $28,368.00 in legal fees." In short, Kirk "has thereby incurred $74,993.00 in legal fees." Moreover, Kirk "has incurred $1,605.32 in costs, including $273.00 in attorney service fees, $300.00 in filing fees, $411.12 in messenger and shipping fees, and $621.20 in copying fees."

Petitioners did not submit any counter declarations or other evidence from which the trial court would be compelled to find the attorney fees sought by Kirk were unduly inflated or unjustified.

The trial court therefore did not abuse its discretion in awarding Kirk $76,598.32 in attorney fees and costs as sanctions under section 128.7 against petitioners.

**DISPOSITION**

The order awarding Kirk Kerkorian $76,598.32 as sanctions pursuant to Code of Civil Procedure section 128.7 is affirmed. Respondent shall recover costs on appeal.

NOT TO BE PUBLISHED.


LUI, J.

We concur:


ROTHSCHILD, P. J.


JOHNSON, J.